IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHEZAREE BOOKER and QWONJIT NELSON, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br>v.<br><br>E.T. BROWNE DRUG CO., INC.,<br><br>Defendant. | CASE NO.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Chezaree Booker and Qwonjit Nelson ("Plaintiffs"), by and through their attorneys, make the following allegations pursuant to the investigation of their counsel and based upon information and belief, except as to allegations specifically pertaining to themselves and their counsel, which are based on personal knowledge, against Defendant E.T. Browne Drug Co., Inc. ("Defendant").

## NATURE OF THE ACTION

1. This is a class action lawsuit on behalf of purchasers of Palmer's Massage Lotion for Stretch Marks, Massage Cream for Stretch Marks, and Tummy Butter for Stretch Marks ("Palmer's" or the "Products"), in the United States.

2. Defendant represents that each of the Products is "for stretch marks," and the use of the Products "helps reduce the appearance of stretch marks:"

1



3.      Unfortunately for consumers, the Products are a sham.  Scientific evidence shows the Products do not prevent or reduce the appearance of stretch marks.  The Products are ineffective for their stated purpose.

4.      According to a 2016 peer-reviewed article assessing the efficacy of different treatments for the prevention of stretch marks, "Palmer[']s Cocoa Butter cream is used for prevention and to reduce the appearance of [stretch marks] by maintaining epidermis elasticity and rehydration of the skin.  This topical is made from cocoa butter and vitamin E, elastin and collagen.  There have been two randomized controlled trials, which have investigated the effects of cocoa butter vs. a placebo, for the prophylactic treatment of [stretch marks].  Both studies

found that there were no significant differences between the creams."[1]  The study further concluded that "Cocoa butter [does] not demonstrate efficacy for preventing [stretch marks] or reducing their severity."  *Id.*

5.      A 2008 peer-reviewed study tested the efficacy of the Products and concluded that "[t]his study confirms that the topical application of cocoa butter in an emollient during pregnancy does not reduce the likelihood of developing [stretch marks] or their severity" and that its "findings do not support the use of cocoa butter lotion for the prevention of" stretch marks.[2]  The study notes that the Products used in the testing were provided directly by Defendant itself.[3]  Thus, Defendant was well-aware that its product flunked testing as far back as 2008.

6.      The Products also flunked a 2009 peer-reviewed study published in the International Journal of Gynecology and Obstetrics, which found that "the use of cocoa butter was not associated with a decrease in the severity of" stretch marks.[4]  This is obviously a stark difference from Defendant's representation that the Products "help[] reduce the appearance of stretch marks."

7.      Each of the Products contain the same purported "active ingredients:" cocoa butter, Vitamin E, collagen, elastin, argan oil, and shea butter.  Studies of these ingredients have repeatedly shown they are ineffective to reduce the appearance of stretch marks.

8.      In 2012, the Cochrane Collaboration conducted a review of 6 trials of topical stretch mark preparations, including a study evaluating the efficacy of collagen and elastin for

---

[1] S. Ud-Din et al., *Topical Management of Striae Distensae (Stretch Marks):  Prevention and Therapy of Striae Rubrae and Albae*, 30 J. of the Eur. Acad. of Dermatology and Venereology 211, 218 (2016).

[2] H. Osman et al., *Cocoa Butter Lotion for Prevention of Striae Gravidarum:  A Double-Blind, Randomised and Placebo-Controlled Trial*, 115 BJOG 1138, 1139 (2008); *id.* at 1142.

[3] *Id.*

[4] Keisha Buchanan et al., *Prevention of Striae Gravidarum with Cocoa Butter Cream*, 108 Int'l J. of Gynecology and Obstetrics 65, 67 (2009).

treating stretch marks.  The Cochrane review "found that there was no statistically significant average difference in the development of stretch marks in women who received topical preparations with active ingredients compared to women who received a placebo or no treatment."[5]

9.      In fact, numerous peer-reviewed studies have concluded that no topical cosmetic products are capable of preventing the development of stretch marks or reducing their appearance once stretch marks have been formed.[6]  According to the Journal of Family Practice, "no topical agent has been proven to prevent or reduce stretch marks."[7]  According to the American Congress of Obstetricians and Gynecologists, "although many creams, lotions, and oils on the market claim to prevent stretch marks, no proof exists that these treatments work."[8]

10.     Upon information and belief, Defendant has sold millions of units of the Products by promising consumers an effective solution for reducing and preventing stretch marks.

11.     Each of the Products use the same labeling, active ingredients, and are advertised for the same exact purposes.  The identical claims made on the packaging of the Products are false and misleading for the same exact reason:  this formula is ineffective for the stated purpose of preventing and reducing the appearance of stretch marks.

12.     Plaintiffs are purchasers of the Products who assert claims on behalf of themselves and similarly situated purchasers of the Products for violations of the consumer protection laws of New York, unjust enrichment, breach of express warranty, and fraud.

---

[5] M. Brennan et al., *Topical Preparations for Preventing Stretch Marks in Pregnancy*, 11 Cochrane Database of Systematic Reviews 11 (2012).
[6] M. Brennan et al. at 12; Hague, Adam et al., Therapeutic targets in the management of striae distensae: A systematic review, 77 J. of the Amer. Acad. of Dermatology, 3, 559 – 568 (2017).
[7] Moore, J. et al., *Do any topical agents prevent or reduce stretch marks?*, 61 J. of Family Practice 757 (2012).
[8] *Id.*

**PARTIES**

13.     Plaintiff Chezaree Booker is a citizen of New York who resides in Yonkers, New York.  Ms. Booker purchased a bottle of Palmer's Cocoa Butter Formula Massage Lotion for Stretch Marks from CVS in Yonkers, New York in January 2020 for approximately $8.  Ms. Booker has previously purchased other Products, including the tummy butter in 2019.  Prior to each purchase, Ms. Booker carefully read each Products' labeling, including the representations that they are "for stretch marks" and "help[] reduce the appearance of stretch marks."  Ms. Booker believed these statements to mean that Palmer's would prevent and reduce the appearance of stretch marks, and relied on them in that she would not have purchased the Products at all, or would have only been willing to pay a substantially reduced price for Palmer's, had she known that these representations were false and misleading.  Ms. Booker used the Products as directed but they did not prevent or reduce the appearance of stretch marks as advertised.

14.     Plaintiff Qwinjit Nelson is a citizen of New York who resides in Bronx, New York.  Ms. Nelson purchased a tub of Palmer's Cocoa Butter Formula Tummy Butter for Stretch Marks from Walgreens in Bronx, New York in December 2019 for approximately $7.  Ms. Nelson has previously purchased the massage lotion at CVS and RiteAid in the Bronx in 2019.  Prior to each purchase, Ms. Nelson carefully read each Products' labeling, including the representations that they are "for stretch marks" and "help[] reduce the appearance of stretch marks."  Ms. Nelson believed these statements to mean that Palmer's would prevent and reduce the appearance of stretch marks, and relied on them in that she would not have purchased the Products at all, or would have only been willing to pay a substantially reduced price for Palmer's, had she known that these representations were false and misleading.  Ms. Nelson used

5

the Products as directed but they did not prevent or reduce the appearance of stretch marks as advertised.

15. Defendant E.T. Browne Drug Co., Inc. is a New Jersey corporation with its principal place of business in Englewood Cliffs, New Jersey. Defendant distributes Palmer's throughout the United States.

## JURISDICTION AND VENUE

16. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 class members and the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs, and at least one Class member is a citizen of a state different from Defendant.

17. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in this District.

18. All conditions precedent necessary for filing this Complaint have been satisfied and/or such conditions have been waived by the conduct of the Defendant.

## CLASS REPRESENTATION ALLEGATIONS

19. Plaintiffs seek to represent a class defined as all persons in the United States who purchased the Products (the "Class"). Excluded from the Class are persons who made such purchase for purpose of resale.

20. Plaintiffs also seek to represent a subclass defined as all Class members who purchased the Products in New York (the "New York Subclass").

21. Members of the Class and New York Subclass are so numerous that their individual joinder herein is impracticable. On information and belief, members of the Class and New York Subclass number in the millions. The precise number of Class members and their

identities are unknown to Plaintiffs at this time but may be determined through discovery. Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant and third-party retailers and vendors.

22. Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members. Common legal and factual questions include, but are not limited to whether Defendant's labeling, marketing and promotion of the Products is false and misleading.

23. The claims of the named Plaintiffs are typical of the claims of the Class in that the named Plaintiffs were exposed to Defendant's false and misleading marketing and promotional materials and representations, purchased the Products, and suffered a loss as a result of those purchases.

24. Plaintiffs are adequate representatives of the Class and Subclass because their interests do not conflict with the interests of the Class members they seek to represent, they have retained competent counsel experienced in prosecuting class actions, and they intend to prosecute this action vigorously. The interests of Class members will be fairly and adequately protected by Plaintiffs and their counsel.

25. The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class members. Each individual Class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single

adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability.  Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

## COUNT I
### Deceptive Acts Or Practices, New York Gen. Bus. Law § 349

26. Plaintiffs incorporate by reference and re-allege each and every allegation set forth above as though fully set forth herein.

27. Plaintiffs bring this claim individually and on behalf of members of the New York Subclass against Defendant.

28. By the acts and conduct alleged herein, Defendant committed unfair or deceptive acts and practices by making false representations on the label of the Products.

29. The foregoing deceptive acts and practices were directed at consumers.

30. The foregoing deceptive acts and practices are misleading in a material way because they fundamentally misrepresent the ability of the Products to prevent and/or reduce the appearance of stretch marks.

31. Plaintiffs and members of the New York Subclass were injured as a result because (a) they would not have purchased the Products if they had known that Palmer's was ineffective to prevent or reduce the appearance of stretch marks, and (b) they overpaid for the Products on account of its misrepresentations that they are "for stretch marks," and "help[] reduce the appearance of stretch marks."

32. On behalf of themselves and other members of the New York Subclass, Plaintiffs seek to enjoin the unlawful acts and practices described herein, to recover their actual damages or fifty dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees.

8

## COUNT II
## False Advertising, New York Gen. Bus. Law § 350

33. Plaintiffs incorporate by reference and re-allege each and every allegation set forth above as though fully set forth herein.

34. Plaintiffs bring this claim individually and on behalf of members of the New York Subclass against Defendant.

35. Based on the foregoing, Defendant has engaged in consumer-oriented conduct that is deceptive or misleading in a material way which constitutes false advertising in violation of Section 350 of the New York General Business Law by misrepresenting on the labeling of Palmer's its ability to prevent or reduce the appearance of stretch marks.

36. The foregoing advertising was directed at consumers and was likely to mislead a reasonable consumer acting reasonably under the circumstances.

37. This misrepresentation has resulted in consumer injury or harm to the public interest.

38. As a result of this misrepresentation, Plaintiffs and member of the New York Subclass have suffered economic injury because (a) they would not have purchased the Products if they had known that Palmer's was ineffective to prevent or reduce the appearance of stretch marks, and (b) they overpaid for the Products on account of its misrepresentations that they are "for stretch marks" and "help[] reduce the appearance of stretch marks."

39. On behalf of themselves and other members of the New York Subclass, Plaintiffs seek to enjoin the unlawful acts and practices described herein, to recover their actual damages or five hundred dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees.

## COUNT III
### Unjust Enrichment

40. Plaintiffs incorporate by reference and re-allege each and every allegation set forth above as though fully set forth herein.

41. Plaintiffs bring this claim individually and on behalf of members of the Class and New York Subclass against Defendant.

42. Plaintiffs and Class members conferred benefits on Defendant by purchasing the Products.

43. Defendant has knowledge of such benefits.

44. Defendant has been unjustly enriched in retaining the revenues derived from Plaintiffs' and Class members' purchases of Palmer's. Retention of those moneys under these circumstances is unjust and inequitable because Defendant misrepresented that the Products are "for stretch marks" and "help[] reduce the appearance of stretch marks."

45. Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiffs and Class members is unjust and inequitable, Defendant must pay restitution to Plaintiffs and the Class members for their unjust enrichment, as ordered by the Court.

## COUNT IV
### Breach of Express Warranty

46. Plaintiffs incorporate by reference and re-allege each and every allegation set forth above as though fully set forth herein.

47. Plaintiffs bring this claim individually and on behalf of members of the Class and New York Subclass against Defendant.

48. In connection with the sale of Palmer's, Defendant, as the designer, manufacturer, marketer, distributor, and/or seller issued written warranties by representing that the Products are "for stretch marks" and "help[] reduce the appearance of stretch marks."

49. In fact, Palmer's does not conform to the above-referenced representations because the Products do not prevent or reduce the appearance of stretch marks.

50. Plaintiffs and Class members were injured as a direct and proximate result of Defendant's breach because (a) they would not have purchased the Products if they had known that Palmer's was ineffective to prevent or reduce the appearance of stretch marks, and (b) they overpaid for the Products on account of its misrepresentations that they are "for stretch marks" and "help[] reduce the appearance of stretch marks."

51. Plaintiffs provided Defendant with timely notice of this breach in letters prior to instituting this action.

## COUNT V
### Fraud

52. Plaintiffs incorporate by reference and re-allege each and every allegation set forth above as though fully set forth herein.

53. Plaintiffs bring this claim individually and on behalf of the members of the proposed Class and New York Subclass against Defendant.

54. As discussed above, Defendant misrepresented on Palmer's labeling that the Products are "for stretch marks" and "help[] reduce the appearance of stretch marks."

55. The false and misleading representations and omissions were made with knowledge of their falsehood. Defendant is a top distributor of cosmetic products in the United States who is undoubtedly aware of the studies finding that its product does not work. Moreover, Defendant was undoubtedly aware that its Products failed the testing conducted in 2008, referenced above. Nonetheless, Defendant continues to sell its ineffective and worthless Palmer's to unsuspecting consumers.

56. The false and misleading representations and omissions made by Defendant, upon which Plaintiffs and members of the proposed Class and New York Subclass reasonably and

justifiably relied, were intended to induce and actually induced Plaintiffs and members of the proposed Class and New York Subclass to purchase the Products.

57. The fraudulent actions of Defendant caused damage to Plaintiffs and members of the proposed Class and Subclass, who are entitled to damages and other legal and equitable relief as a result.

## RELIEF DEMANDED

58. WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

   a. For an order certifying the nationwide Class and the New York Subclass under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs as representatives of the Class and New York Subclass and Plaintiffs' attorneys as Class Counsel to represent the Class and New York Subclass members;

   b. For an order declaring that Defendant's conduct violates the statutes referenced herein;

   c. For an order finding in favor of Plaintiffs, the nationwide Class, and the New York Subclass on all counts asserted herein;

   d. For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

   e. For prejudgment interest on all amounts awarded;

   f. For an order of restitution and all other forms of equitable monetary relief;

   g. For an order enjoining Defendant from continuing the illegal practices detailed herein and compelling Defendant to undertake a corrective advertising campaign; and

   h. For an order awarding Plaintiffs and the Class and New York Subclass their reasonable attorneys' fees and expenses and costs of suit.

## JURY TRIAL DEMANDED

Plaintiffs demand a trial by jury on all claims so triable.

Dated:  April 21, 2020                    Respectfully submitted,

                                                **BURSOR & FISHER, P.A.**

                                                By:   /s/ *Yitzchak Kopel*
                                                         Yitzchak Kopel

                                              Scott A. Bursor
                                              Yitzchak Kopel
                                              888 Seventh Avenue
                                              New York, NY 10019
                                              Tel:  (646) 837-7150
                                              Fax: (212) 989-9163
                                              E-Mail:  scott@bursor.com
                                                                  ykopel@bursor.com

*Attorneys for Plaintiffs*