UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CHEZAREE BOOKER and QWONJIT NELSON, individually and on behalf of all others similarly situated,

                          Plaintiffs,

-against-

E.T. BROWNE DRUG CO., INC.,

                          Defendant.

**MEMORANDUM OPINION AND ORDER**

20-CV-03166 (PMH)

PHILIP M. HALPERN, United States District Judge:

This case is about stretch mark ointments and their classifications under the FDCA.

Chezaree Booker ("Booker") and Qwonjit Nelson ("Nelson," and collectively, "Plaintiffs") bring this putative class action against E.T. Browne Drug Co., Inc. ("Defendant") on behalf of individuals in the United States and New York, specifically. (Doc. 1, "Compl."). Plaintiffs allege: (1) violation of N.Y. Gen. Bus. Law § 349; (2) violation of N.Y. Gen. Bus. Law § 350; (3) unjust enrichment; (4) breach of express warranty; and (5) fraud. (*Id*. ¶¶ 26-57).

Defendant moved to dismiss the Complaint, in its entirety and with prejudice, under Federal Rule of Civil Procedure 12(b)(6) on September 18, 2020. (Doc. 19; Doc. 20, "Def. Br.").[1]

---

[1] Defendant also filed, in support of its motion, a document signed by Angel A. Garganta—counsel for Defendant—entitled, "Defendant E.T. Browne Drug. Co., Inc.'s Request for Judicial Notice." (Doc. 21, "Garganta Decl."). The document, invoking Federal Rule of Evidence 201, asks the Court to "take judicial notice of the [nine] exhibits annexed" thereto. (*Id*. at 1). First of all, this document contains substantive legal arguments that belong in the memorandum of law under Local Civil Rule 7.1(a)(2) (explaining that a motion shall include, *inter alia*, "[a] memorandum of law, setting forth the cases and other authorities relied upon in support of the motion"); indeed, this document appears to be a thinly-veiled attempt to circumvent Rule 4.H of this Court's Individual Practices, which limits moving memoranda of law to twenty-five pages. Second, Rule 4.I of this Court's Individual Practices requires that "[a]ll exhibits shall be . . . submitted in compliance with Local Civil Rule 7.1(a)(3)." Although the document does not make a representation that it has been executed under penalty of perjury under 28 U.S.C. § 1746, Local Civil Rule 1.9 permits the Court—and the Court exercises its discretion here—to accept the document as a substitute for an attorney's declaration because it has been signed by counsel under Federal Rule of Civil Procedure 11.

Plaintiffs served their memorandum of law in opposition on October 16, 2020 (Doc. 22, "Opp. Br."), and the motion was briefed fully with the service and filing of Defendant's reply brief on October 30, 2020 (Doc. 23, "Reply Br.").

For the reasons set for the below, Defendant's motion is GRANTED IN PART.

## BACKGROUND

Defendant distributes throughout the United States: (1) Palmer's Massage Lotion for Stretch Marks ("Lotion"); (2) Palmer's Massage Cream for Stretch Marks ("Cream"); and (3) Palmer's Tummy Butter for Stretch Marks ("Butter," and collectively, "Products"). (Compl. ¶¶ 1, 15; *see also* Def. Br. at 1 (representing that Defendant "manufactures, advertises, and distributes" the Products)). The Products all state on their labels, as reproduced in the Complaint, that they are "for STRETCH MARKS" and "Help[] Reduce the Appearance of Stretch Marks." (Compl. ¶ 2). Plaintiffs, however, contend that the Products are nothing more than snake oil because they are "ineffective for the stated purpose of preventing and reducing the appearance of stretch marks." (*Id*. ¶ 11; *see also id*. ¶ 3).

The specifics of Plaintiffs' stories vary only in degrees. Booker purchased two Products, the Butter and the Lotion, at a CVS in Yonkers, New York, in 2019 and 2020, respectively. (*Id*. ¶ 13). Nelson, likewise, purchased both the Butter and the Lotion at drug stores in the Bronx in 2019. (*Id*. ¶ 14). Plaintiffs maintain that, before making their purchases, they both "carefully read each Products' labeling, including the representations that they are 'for stretch marks' and 'help[] reduce the appearance of stretch marks.'" (*Id*. ¶¶ 13-14). The labels' representations, according to Plaintiffs, communicated that the goods "would prevent and reduce the appearance of stretch marks . . . ." (*Id*. ¶¶ 13-14). Plaintiffs maintain that despite "us[ing] the Products as directed . . . they did not prevent or reduce the appearance of stretch marks as advertised." (*Id*. ¶¶ 13-14).

This litigation followed.

**STANDARD OF REVIEW**

I. <u>Federal Rule of Civil Procedure 12(b)(6)</u>

A Rule 12(b)(6) motion enables a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). The factual allegations pled "must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555.

"When there are well-ple[d] factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. Thus, the Court must "take all well-ple[d] factual allegations as true, and all reasonable inferences are drawn and viewed in a light most favorable to the plaintiff[]." *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996). The presumption of truth, however, "'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678 (alteration in original)). Therefore, a plaintiff must provide "more than labels and conclusions" to show entitlement to relief. *Twombly*, 550 U.S. at 555.

II.     Documents Considered

On a Rule 12(b)(6) motion, "the Court is entitled to consider facts alleged in the complaint and documents attached to it or incorporated in it by reference, documents 'integral' to the complaint and relied upon in it, and facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence." *Heckman v. Town of Hempstead*, 568 F. App'x 41, 43 (2d Cir. 2014); *see also Manley v. Utzinger*, No. 10-CV-02210, 2011 WL 2947008, at *1 n.1 (S.D.N.Y. July 21, 2011) ("The Court may consider any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference, and documents possessed by or known to the plaintiff and upon which plaintiff relied in bringing the suit."). Still, "[w]here an extrinsic document is not incorporated by reference, the district court may nevertheless consider it if the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint." *Schafer v. Direct Energy Servs., LLC*, 845 F. App'x 81, 82 (2d Cir. 2021) (internal quotation marks omitted).

Defendant submits nine documents for the Court's consideration: (1) a copy of the box and tube labels for the Cream (Doc. 21-1, "Garganta Ex. A"); (2) a copy of the label for the Lotion (Doc. 21-2, "Garganta Ex. B"); (3) a copy of the label for the Butter (Doc. 21-3, "Garganta Ex. C"); (4) a copy of an article, *Topical Management of Striae Distensae (Stretch Marks): Prevention and Therapy of Striae Rubrae and Albae* (Doc. 21-4); (5) a copy of an article, *Cocoa Butter Lotion for Prevention of Striae Gravidarum: A Double-Blind, Randomised and Placebo-Controlled Trial* (Doc. 21-5); (6) a copy of an article, *Prevention of Striae Gravidarum with Cocoa Butter Cream* (Doc. 21-6); (7) a copy of an article, *Topical Preparations for Preventing Stretch Marks in Pregnancy* (Doc. 21-7); (8) a copy of an article, *Therapeutic Targets in the Management of Striae*

*Distensae: A Systemic Review* (Doc. 21-8); and (9) a copy of an article, *Do Any Topical Agents Prevent or Reduce Stretch Marks?* (Doc. 21-9).

Of these nine documents, the Court considers the first three—that is, those documents providing complete copies of the Products' labels—on this motion because the information provided therein is integral to this Complaint. *See, e.g.*, *Holve v. McCormick & Co., Inc.*, 334 F. Supp. 3d 535, 558 (W.D.N.Y. 2018) (deeming ingredient labels "integral to the Complaint" in a putative class action alleging deceptively marketed spices and seasoning products); *Daniel v. Mondelez Int'l, Inc.*, 287 F. Supp. 3d 177, 183 (E.D.N.Y. 2018) ("The Court's consideration of Defendant's submissions regarding the labeling of the box does not convert this motion to dismiss to a motion for summary judgment. Defendant's submissions related only to the packaging of the Product—the very basis for Plaintiff's claims."); *Stewart v. Riviana Foods Inc.*, No. 16-CV-06157, 2017 WL 4045952, at *7 (S.D.N.Y. Sept. 11, 2017) (determining that certain "packaging submissions" could be considered properly on a motion to dismiss because they were "incorporated by reference in the Complaint, in that the Complaint discusses each at length" (internal quotation marks omitted)); *Kacocha v. Nestlé Purina Petcare Co.*, No. 15-CV-05489, 2016 WL 4367991, at *12 (S.D.N.Y. Aug. 12, 2016) (same). The Court does not, however, consider the six remaining documents—the articles—that Defendant provided. Although these documents were discussed throughout the Complaint and may even be integral to it (*see* Compl. ¶¶ 4-9), given the conclusions reached herein, use of these documents would be premature.

## ANALYSIS

Defendant offers three arguments in support of dismissal: (1) the claims are preempted by the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 301 *et seq.* ("FDCA"); (2) the claims are based on studies evaluating drug representations that the Products do not make (*i.e.*, preventing

stretch marks); and (3) the unjust enrichment claim is duplicative of the other claims. (Def. Br. at 10-23). The Court addresses these arguments *seriatim*.

    I.    <u>The Affirmative Defense of Preemption</u>

Preemption is a creature of the Supremacy Clause of the United States Constitution which states that "the Laws of the United States . . . shall be the supreme Law of the Land . . . ." U.S. Const. art. VI, cl. 2; *see also Fawemimo v. Am. Airlines, Inc.*, 751 F. App'x 16, 18 (2d Cir. 2018) (explaining that the Supremacy Clause "invalidates state laws that interfere with, or are contrary to, federal law" (quoting *Air Transp. Ass'n of Am., Inc. v. Cuomo*, 520 F.3d 218, 220 (2d Cir. 2008))). Although preemption is an affirmative defense to be pled and proven, it "can still support a motion to dismiss if the . . . barrier to suit is evident from the face of the complaint." *Glover v. Bausch & Lomb Inc.*, 6 F.4th 229, 236 n.3 (2d Cir. 2021) (quoting *Ricci v. Teamsters Union Loc. 456*, 781 F.3d 25, 28 (2d Cir. 2015)). Where, as here, preemption is considered on a motion to dismiss, "[a] district court may find a claim preempted only if the facts alleged in the complaint do not plausibly give rise to a claim that is not preempted." *Reid v. GMC Skin Care USA Inc.*, No. 15-CV-00277, 2016 WL 403497, at *8 (N.D.N.Y. Jan. 15, 2016) (quoting *Galper v. JP Morgan Chase Bank, N.A.*, 802 F.3d 437, 444 (2d Cir. 2015)).

As reiterated recently by the Second Circuit, generally:

> three types of preemption exist: (1) express preemption, where Congress has expressly preempted local law; (2) field preemption, where Congress has legislated so comprehensively that federal law occupies an entire field of regulation and leaves no room for state law; and (3) conflict preemption, where local law conflicts with federal law such that it is impossible for a party to comply with both or the local law is an obstacle to the achievement of federal objectives.

*Williams v. Marinelli*, 987 F.3d 188, 198 (2d Cir. 2021) (internal quotation marks omitted). Defendant maintains that the FDCA expressly preempts Plaintiffs' claims. (Def. Br. at 10-16).

A. <u>The Products' Categorization Under the FDCA</u>

Congress passed the FDCA in 1938 "to protect consumers from fraud and misrepresentations in the sale of food, drugs, and cosmetics." *Young v. L'Oréal, Inc.*, No. 21-CV-00446, 2021 WL 2295625, at *2 (S.D.N.Y. May 20, 2021) (internal quotation marks omitted), *adopted sub nom. Young v. L'Oréal USA, Inc.*, 2021 WL 2292341 (S.D.N.Y. June 4, 2021). This statute, among other things, created the United States Food and Drug Administration ("FDA") and charged that agency with ensuring that "drugs are safe and effective" and that "cosmetics are safe and properly labeled." 21 U.S.C. §§ 393(a), (b)(2)(B), (b)(2)(D).

The FDCA defines drugs, in part, as "articles intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in man or other animals" and "articles (other than food) intended to affect the structure or function of the body of man . . . ." 21 U.S.C. §§ 321(g)(1)(B), (C). Cosmetics, however, are defined as "articles intended to be rubbed, poured, sprinkled, or sprayed on, introduced into, or otherwise applied to the human body or any part thereof for cleansing, beautifying, promoting attractiveness, or altering the appearance . . . ." 21 U.S.C. § 321(i)(1). These definitions turn on an item's *intended* use, "which can be determined from objective evidence such as the product's current and past containers, instructions, and advertisements." *Elkind v. Revlon Consumer Prods. Corp.*, No. 14-CV-02484, 2015 WL 2344134, at *7 (E.D.N.Y. May 14, 2015) (quoting *Estee Lauder, Inc. v. U.S. Food & Drug Admin.*, 727 F. Supp. 1, 2 (D.D.C. 1989)).

As pled, it did not appear readily that the Products made any representation about *preventing* stretch marks (*i.e.*, affecting the structure of the body); indeed, the labels reproduced in the Complaint stated merely that the Products were for stretch marks and would help reduce the *appearance* thereof. (Compl. ¶ 2). Defendant, however, provided the Court with copies of the

7

Products' complete packaging. (*See* Garganta Ex. A; Garganta Ex. B; Garganta Ex. C). Upon review of those images, the labels on the Lotion and Cream provide:

> **DIRECTIONS:** Apply all over skin, concentrating *on stretch mark prone areas such as* tummy, hips, thighs and bust. Massage liberally into skin twice daily.

(Garganta Ex. A; Garganta Ex. B (italics added)). The Butter label instructs likewise:

> **DIRECTIONS:** Using a circular motion, gently massage **Palmer's® Tummy Butter** solid balm *into stretch mark prone areas* 3 times a day or as often as possible.

(Garganta Ex. C (italics added)).[2] The word "prone" is defined, in relevant part, as synonymous with "given" or "subject." *Prone*, Funk & Wagnalls Standard College Dictionary (1973). With this understanding, the labels' language suggests that the Products could have been intended to prevent stretch marks from developing in the first place. Making such a representation would, as Defendant concedes at least tacitly, render the Products drugs as opposed to cosmetics under the FDCA. (*See, e.g.*, Def. Br. at 1 (characterizing "drug effects" as "preventing or treating stretch marks"); Reply Br. at 1 (noting a "difference between drug claims focusing on preventing or affecting the development of stretch marks and cosmetic claims focusing on . . . appearance")).[3]

---

[2] Plaintiffs argued that the instructions' use of "prone" reflected an intent to "prevent new stretch marks from developing on those stretch mark prone areas." (Opp. Br. at 1; *see also id*. at 5-6). Defendant did not address this plausible argument on reply, arguing instead with a single sentence that the quoted language is simply consistent with its role as a moisturizer. (Reply Br. at 5).

[3] Defendant cited also in its moving brief, without explaining the basis upon which the Court could consider the document, a Warning Letter that the FDA issued to an unrelated entity, Long Life Unlimited, LLC ("Long Life"), on or about January 31, 2018. (Def. Br. at 13). The FDA, in that letter, cautioned Long Life that a number of its products—including an ointment apparently claiming that it could prevent stretch marks—qualified as drugs under the FDCA. U.S. Food & Drug Admin. MARCS-CMS 533282 (Jan. 31, 2018), *available at* https://www.fda.gov/inspections-compliance-enforcement-and-criminal-investigations/warning-letters/long-life-unlimited-533282-01312018. Defendant cites this document for the premise that "the FDA has shown that it is willing and able to act when it determines that advertising claims related to stretch marks constitute a drug rather than a cosmetic claim." (Def. Br. at 13). That may well be, but even if the Court considered the document: (1) the FDA's enforcement or non-enforcement of the FDCA does not impact the instant analysis; and (2) the letter would suggest also that the FDA considers a cream purporting to prevent stretch marks a drug under the FDCA.

Considering the Complaint, the images provided by Defendant considered properly on this motion (as Defendant argues), and that the Products' categorization under the FDCA requires a determination of their intended use, the Court cannot, at the pleading stage, determine as a matter of law that the Products qualify as drugs, cosmetics, or both, under the FDCA. However, given the procedural posture of this case and the inferences to which Plaintiff is entitled at this juncture, and the fact that when an item qualifies as both a drug and a cosmetic it is held to those requirements applicable to drugs, *see United States v. Article . . . Consisting of 216 Cartoned Bottles, More or Less, Sudden Change*, 409 F.2d 734, 739 (2d Cir. 1969), the Court assumes—for purposes of this Memorandum Opinion and Order, only—that the Products would meet the FDCA's definition of drugs. *See Elkind*, 2015 WL 2344134, at *7 ("In this Court's view, because the categorization . . . hinges on the perceived intended use, resolving that question is inappropriate at this early pleading stage. Accordingly . . . the court assumes, for the purposes of this Memorandum and Order, that all of the Products are 'Drugs' as defined by the FDCA.").[4]

B. The FDCA's Preemption of State Law Claims Concerning Non-Prescription Drugs

Having determined, for the purposes of the instant analysis, that the Products qualify as drugs under the FDCA, the Court turns to the contours of the statute's preemption.

Express preemption exists where the "intent to preempt state law is explicitly stated in the statute's language." *In re PepsiCo, Inc., Bottled Water Mktg. & Sales Pracs. Litig.*, 588 F. Supp.

---

[4] Defendant argued in reply that Plaintiffs pled that the Products are cosmetics under the FDCA and cannot change their theory. (Reply Br. at 4). This argument is, at best, disingenuous. Plaintiffs used the word "cosmetic" twice in the Complaint (itself, a document that did not mention the FDCA): once in alleging that "numerous peer-reviewed studies have concluded that no topical cosmetic products are capable of preventing the development of stretch marks," and once in describing Defendant as a "top distributor of cosmetic products in the United States . . . ." (Compl. ¶¶ 9, 55). There is no basis for the Court to conclude— and Defendant has offered none to support the notion that—Plaintiffs must have used the word "cosmetic" in accordance with its specific definition under the FDCA and are now locked into that position.

9

2d 527, 530 (S.D.N.Y. 2008) (internal quotation marks omitted). On this score, with respect to drugs, the FDCA provides that absent certain exceptions:

> no State or political subdivision of a State may establish or continue in effect any requirement--
>
> (1) that relates to the regulation of a drug that is not subject to the requirements of section 353(b)(1) or 353(f)(1)(A) of this title; and
>
> (2) that is different from or in addition to, or that is otherwise not identical with, a requirement under this chapter, the Poison Prevention Packaging Act of 1970 (15 U.S.C. 1471 et seq.), or the Fair Packaging and Labeling Act (15 U.S.C. 1451 et seq.).

21 U.S.C. § 379r(a); *see also Canale v. Colgate-Palmolive Co.*, 258 F. Supp. 3d 312, 319 (S.D.N.Y. 2017) (concluding, *inter alia*, that 21 U.S.C. § 379r "preempt[s] state law labeling or packaging requirements that are not identical to FDA requirements"); *Bowling v. Johnson & Johnson*, 65 F. Supp. 3d 371, 374-75 (S.D.N.Y. 2014) ("Under section 379r of the FDCA, state law claims that depart in any way from FDA regulation . . . are expressly preempted."). Distilled to its essence, this provision preempts expressly state laws governing non-prescription (or "over-the-counter") drugs that are different from federal law. *See Canale*, 258 F. Supp. 3d at 319 n.4; *Bowling*, 65 F. Supp. 3d at 375 ("In the context of OTC drugs, the FDCA expressly preempts state law labeling requirements that are different from . . . federal labeling requirements.").

Apart from that language limiting state law expressly, the FDCA instructs also that:

> [e]xcept as provided in subsection (b), all such proceedings for the enforcement, or to restrain violations, of this chapter shall be by and in the name of the United States.

21 U.S.C. § 337(a); *see also* 21 U.S.C. § 333 (outlining penalties); *POM Wonderful LLC v. Coca-Cola Co.*, 573 U.S. 102, 109 (2014) ("[T]he FDCA and its regulations provide the United States with nearly exclusive enforcement authority, including the authority to seek criminal sanctions in some circumstances."); *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 352-53 (2001)

10

(determining that, given the fact that FDCA violations are prosecuted only by the United States, claims where violation of the statute was a "critical element" were impliedly preempted); *Glover*, 6 F.4th at 237 (explaining that "[t]o avoid implied preemption . . . claims must be based not on the FDCA, but on traditional state tort law . . . ." (internal quotation marks omitted)).

Given the FDCA's language, Plaintiffs must thread a very narrow needle to avoid preemption: the conduct underlying the claim *must violate* the FDCA, but the claim itself cannot exist *because* the conduct constitutes a violation of the FDCA. *See, e.g.*, *Glover*, 6 F.4th at 237 ("[P]laintiff must be suing for conduct that violates the FDCA . . . but . . . not . . . because the conduct violates the FDCA . . . ."); *Critcher v. L'Oréal USA, Inc.*, 959 F.3d 31, 35-36 (2d Cir. 2020) ("[T]he FDCA preempts not only those state laws that are in conflict with it . . . but also *any* state law that provides for labeling requirements that are not *exactly the same* . . . ." (italics in original)); *Elkind*, 2015 WL 2344134, at *6 (observing that state law claims must proceed through "a narrow gap" to avoid preemption under the FDCA).[5]

### C. Preemption of Plaintiff's State Law Claims

The FDCA prohibits "[t]he introduction or delivery for introduction into interstate commerce of any . . . drug . . . that is adulterated or misbranded." 21 U.S.C. § 331(a); *see also* 21 U.S.C. §§ 331(b) (banning the "misbranding of any . . . drug . . . in interstate commerce"), 331(c) (barring "[t]he receipt in interstate commerce of any . . . drug . . . that is adulterated or misbranded, and the delivery or proffered delivery thereof for pay or otherwise"), 331(g) (proscribing "[t]he

---

[5] N.Y. Gen. Bus. Law § 349(d) instructs that "it shall be a complete defense that the act or practice . . . complies with the rules and regulations of, and the statutes administered by . . . any official department, division, commission or agency of the United States . . . ." Neither side raised this provision in their briefing, but at least one court has observed that "New York law expressly incorporates the standard imposed by the FDCA. It provides that anything that complies with federal law and regulations *per se* complies with state law. That being so, Plaintiffs' state-law claims are not preempted by federal law." *Izquierdo v. Mondelez Int'l, Inc.*, No. 16-CV-04697, 2016 WL 6459832, at *4 (S.D.N.Y. Oct. 26, 2016).

manufacture . . . of any . . . drug . . . that is adulterated or misbranded"). A drug is misbranded under the FDCA when "its labeling is false or misleading in any particular." 21 U.S.C. § 352(a)(1). Consequently, it appears that Plaintiffs' grievances—*i.e.*, that the Products do not prevent or reduce the appearance of stretch marks, despite the claims on their labels—fall squarely within the realm of conduct that would violate the FDCA. *See Reid*, 2016 WL 403497, at *10 (explaining that plaintiffs' claims would not be different from obligations imposed under the FDCA because they "would simply require Defendant to truthfully state . . . efficacy . . . or not sell its products"). These claims do not, however, rely on the FDCA for their existence; indeed, the FDCA is mentioned nowhere in the Complaint and the claims appear to be of a vintage that would exist under New York State law even if the FDCA had never been enacted. *See Jovel v. i-Health, Inc.*, No. 12-CV-05614, 2013 WL 5437065, at *5 (E.D.N.Y. Sept. 27, 2013) (explaining that the plaintiff's claim of misrepresentation "is a traditional claim of consumer misrepresentation, not an attempt to enforce the FDCA's labeling requirements").[6]

Under Second Circuit precedent, the Court may dismiss a claim on the affirmative defense of preemption "only if the facts alleged in the complaint do not plausibly give rise to a claim that is not preempted." *Galper*, 802 F.3d at 444. Based upon the foregoing, the Court simply cannot reach that conclusion at this juncture because—said differently—there are no claims for relief in this Complaint that the Court can construe as preempted and thus subject to dismissal. Defendant's motion to dismiss on the basis of preemption is, accordingly, denied.

---

[6] It is possible that the specific representations are preempted by specific provisions of the FDCA or related regulations. Accordingly, although the Court's initial analysis on the extant motion suggests that the claims are not preempted, that conclusion does not foreclose revisiting the issue after the close of discovery.

II.  Plaintiffs' Reliance on Articles

Given the Court's conclusions thus far, Defendant's second argument is addressed in short order, as it relies on the assumption that the Products do not make claims that would render them drugs under the FDCA. Generally, Defendant argues that four of Plaintiffs' five claims—*i.e.*, violation of N.Y. Gen. Bus. Law § 349, violation of N.Y. Gen. Bus. Law § 350, breach of express warranty, and fraud—must be dismissed because:

> [n]one of Plaintiffs' studies undercuts the Products' claims that they help reduce the appearance, or look, of stretch marks because the studies instead focus entirely on drug claims that the Products do not make: the prevention and/or treatment of stretch marks.

(Def. Br. at 17). In order for this argument to prevail, one must necessarily accept the principle, *ab initio*, that the Products are cosmetics.

Having determined that the Court cannot conclude at this time whether the Products meet the definition of drug or cosmetic under the FDCA—a conclusion that depends upon the Products' intended use —the Court will not dismiss the claims for relief on the argument that the articles concern drug claims that the Products do not make.

III.  Unjust Enrichment

A claim for unjust enrichment under New York State law requires that Plaintiff "plead: '1) that the defendant benefitted; 2) at plaintiff's expense, and 3) that equity and good conscience require restitution.'" *Yak v. BiggerPockets, L.L.C.*, No. 19-CV-05394, 2020 WL 5505351, at *9 (S.D.N.Y. Sept. 10, 2020) (quoting *Kramer v. Lockwood Pension Servs., Inc.*, 653 F. Supp. 2d 354, 381 (S.D.N.Y. 2009)). With respect to this claim for relief, Defendant argues, *inter alia*, that the claim must be dismissed because it is duplicative of the other claims. (Def. Br. at 22-23). The Court agrees.

According to the New York State Court of Appeals, "[a]n unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim." *Corsello v. Verizon New York, Inc.*, 967 N.E.2d 1177, 1185 (N.Y. 2012). This claim for relief is "not a catchall cause of action to be used when others fail. It is available only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff." *Id.*

Plaintiffs' unjust enrichment claim, in this particular case, is premised on the notion that it is "unjust and inequitable" for Defendant to keep the money reaped as a result of hawking items that did not actually prevent or reduce the appearance of stretch marks. (Compl. ¶¶ 44-45). This is the same conduct underlying the other four claims. (*See, e.g., id.* ¶¶ 30-31, 38, 54-55). The unjust enrichment claim must, consequently, be dismissed as duplicative of Plaintiff's four other claims. *See, e.g., Reynolds v. Lifewatch, Inc.*, 136 F. Supp. 3d 503, 525 (S.D.N.Y. 2015) ("If Plaintiff's GBL and fraud claims are successful, the unjust enrichment claim is duplicative, as all three claims stem from the same underlying allegation . . . . If Plaintiff's GBL and fraud claims are not successful, the reason for their insufficiency would not be remedied by an unjust enrichment claim."); *Weisblum v. Prophase Labs, Inc.*, 88 F. Supp. 3d 283, 297 (S.D.N.Y. 2015) ("[B]ecause Weisblum has not shown that his unjust enrichment claim differs from his contract and tort claims, it must be dismissed."); *Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*, 8 F. Supp. 3d 467, 483-84 (S.D.N.Y. 2014) (dismissing unjust enrichment as duplicative of breach of express warranty and N.Y. Gen. Bus. Law § 349 claims); *Ebin v. Kangadis Food Inc.*, No. 13-CV-02311, 2013 WL 6504547, at *7 (S.D.N.Y. Dec. 11, 2013) ("[A]n unjust enrichment claim will not lie where it simply duplicates, or replaces, a conventional contract or tort claim. Here, the Court finds

that plaintiffs have failed to explain how their unjust enrichment claim is not merely duplicative of their other causes of action." (internal citations and quotation marks omitted)).[7]

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is GRANTED IN PART. Plaintiffs' third claim for relief, unjust enrichment, is dismissed; their remaining claims based on violation of N.Y. Gen. Bus. Law § 349, violation of N.Y. Gen. Bus. Law § 350, breach of express warranty, and fraud—that is, their first, second, fourth, and fifth claims for relief—shall proceed into discovery.

Defendant is directed to file its Answer within fourteen days of the date of this Memorandum Opinion and Order. The Court will issue an Initial Pretrial Conference Order and set a conference date thereafter.

The Clerk of the Court is respectfully directed to terminate the motion sequence pending at Doc. 19.

SO ORDERED:

Dated: White Plains, New York
September 23, 2021

_____
PHILIP M. HALPERN
United States District Judge

---

[7] Plaintiffs, citing Federal Rule of Civil Procedure 8(d)(3), argue in conclusory fashion that their unjust enrichment claim for relief must survive because they are permitted to plead alternate theories of relief. (Opp. Br. at 20). This argument, as explained by Judge Román, "disregard[s] the fact that federal courts must defer to state courts as to substantive state common law. Certainly, if in New York courts the instant claim for unjust enrichment would be unavailable—as here, where Plaintiff simply restates elements of other claims—it must equally be unavailable in the federal courts." *Goldemberg*, 8 F. Supp. 3d 483-84.